# Exhibit 3

3800-PM-BCW0011   Rev. 2/2020
Permit

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**
**BUREAU OF CLEAN WATER**



**pennsylvania**
DEPARTMENT OF ENVIRONMENTAL
PROTECTION

# AUTHORIZATION TO DISCHARGE UNDER THE NATIONAL POLLUTANT DISCHARGE ELIMINATION SYSTEM DISCHARGE REQUIREMENTS FOR INDUSTRIAL WASTEWATER FACILITIES

## NPDES PERMIT NO: PA0006254
## Amendment No. 3

In compliance with the provisions of the Clean Water Act, 33 U.S.C. Section 1251 *et seq.* ("the Act") and Pennsylvania's Clean Streams Law, as amended, 35 P.S. Section 691.1 *et seq.*,

**BVPV Styrenics LLC**
**400 Frankfort Road**
**Monaca, PA 15061-2212**

is authorized to discharge from a facility known as **Beaver Valley Site**, located in **Potter Township, Beaver County**, to **Ohio River (WWF) and Raccoon Creek (WWF)** in Watershed(s) **20-B and 20-D** in accordance with effluent limitations, monitoring requirements and other conditions set forth in Parts A, B and C hereof.

**THIS PERMIT SHALL BECOME EFFECTIVE ON**     AUGUST 1, 2019

**THIS PERMIT SHALL EXPIRE AT MIDNIGHT ON**     JULY 31, 2024

The authority granted by this permit is subject to the following further qualifications:

1.  If there is a conflict between the application, its supporting documents and/or amendments and the terms and conditions of this permit, the terms and conditions shall apply.

2.  Failure to comply with the terms, conditions or effluent limitations of this permit is grounds for enforcement action; for permit termination, revocation and reissuance, or modification; or for denial of a permit renewal application. (40 CFR 122.41(a))

3.  A complete application for renewal of this permit, or notice of intent to cease discharging by the expiration date, must be submitted to DEP at least 180 days prior to the above expiration date (unless permission has been granted by DEP for submission at a later date), using the appropriate NPDES permit application form. (40 CFR 122.41(b), 122.21(d)(2))

    In the event that a timely and complete application for renewal has been submitted and DEP is unable, through no fault of the permittee, to reissue the permit before the above expiration date, the terms and conditions of this permit, including submission of the Discharge Monitoring Reports (DMRs), will be automatically continued and will remain fully effective and enforceable against the discharger until DEP takes final action on the pending permit application. (25 Pa. Code §§ 92a.7 (b), (c))

4.  This NPDES permit does not constitute authorization to construct or make modifications to wastewater treatment facilities necessary to meet the terms and conditions of this permit.

**DATE PERMIT ISSUED**     JULY 16, 2019     **ISSUED BY**

**DATE PERMIT AMENDMENT ISSUED**     JULY 30, 2021

Christopher Kriley, P.E.
**Environmental Program Manager**
**Southwest Regional Office**

3800-PM-BCW0011   Rev. 9/2016
Permit                                                                                                          Permit No. PA0006254 A-3

## PART A - EFFLUENT LIMITATIONS, MONITORING, RECORDKEEPING AND REPORTING REQUIREMENTS

I. A.  For Outfall ___001___, Latitude __40° 39' 29.75"__, Longitude __-80° 21' 26.75"__, River Mile Index __951.40__, Stream Code __32317__

Receiving Waters:   Ohio River (WWF)

Type of Effluent:   Non-contact cooling water, excess intake water, and storm water runoff

1. The permittee is authorized to discharge during the period from **August 1, 2019** through **July 31, 2024**.

2. Based on the anticipated wastewater characteristics and flows described in the permit application and its supporting documents and/or amendments, the following effluent limitations and monitoring requirements apply (see also Additional Requirements and Footnotes).

| Parameter | Effluent Limitations | | | | | | Monitoring Requirements | |
|---|---|---|---|---|---|---|---|---|
| | Mass Units (lbs/day) [1] | | Concentrations (mg/L unless otherwise indicated) | | | | Minimum [2] | Required Sample Type |
| | Average Monthly | Daily Maximum | Instant. Minimum | Average Monthly | Daily Maximum | Instant. Maximum | Measurement Frequency | |
| Flow (MGD) | Report | Report | XXX | XXX | XXX | XXX | Continuous | Recorded |
| pH (S.U.) | XXX | XXX | 6.0 | XXX | XXX | 9.0 | 1/week | Grab |
| Total Residual Chlorine (TRC) | XXX | XXX | XXX | 0.5 | 1.0 | XXX | 1/week | Grab |
| Temperature (°F) | XXX | XXX | XXX | XXX | 110.0 | XXX | 1/week | I-S |
| Total Dissolved Solids | XXX | XXX | XXX | XXX | Report | XXX | 1/quarter | Grab |
| Copper, Total | XXX | XXX | XXX | Report | Report | XXX | 2/month | Grab |
| Sulfate, Total | XXX | XXX | XXX | XXX | Report | XXX | 1/quarter | Grab |
| Chloride | XXX | XXX | XXX | XXX | Report | XXX | 1/quarter | Grab |
| Bromide | XXX | XXX | XXX | XXX | Report | XXX | 1/quarter | Grab |
| Styrene | XXX | XXX | XXX | Report | Report | XXX | 2/month | Grab |

Samples taken in compliance with the monitoring requirements specified above shall be taken at the following location(s):

 at Outfall 001

3800-PM-BCW0011   Rev. 9/2016
Permit                                                                                               Permit No. PA0006254 A-3

## PART A - EFFLUENT LIMITATIONS, MONITORING, RECORDKEEPING AND REPORTING REQUIREMENTS

I. B.   **For Outfall** ___002___ , **Latitude** ___40° 39' 34.65"___ , **Longitude** ___-80° 21' 0.34"___ , **River Mile Index** ___0.2400___ , **Stream Code** ___33564___

**Receiving Waters:**   Raccoon Creek (WWF)

**Type of Effluent:**   Treated process wastewaters from polystyrene and specialty plastics production; cooling tower blowdown; filter backwash water from potable water plant; miscellaneous non-hazardous purge water; and treated sanitary wastewaters monitored at IMP 102

1.  The permittee is authorized to discharge during the period from **August 1, 2019** through **July 31, 2024**.

2.  Based on the anticipated wastewater characteristics and flows described in the permit application and its supporting documents and/or amendments, the following effluent limitations and monitoring requirements apply (see also Additional Requirements and Footnotes).

| Parameter | Effluent Limitations | | | | | | Monitoring Requirements | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Mass Units (lbs/day) [1] | | Concentrations (mg/L unless otherwise indicated) | | | | Minimum [2] | Required |
| | Annual Average | Daily Maximum | Instant. Minimum | Annual Average | Daily Maximum | Instant. Maximum | Measurement Frequency | Sample Type |
| Flow (MGD) | Report Avg Mo | Report | XXX | XXX | XXX | XXX | 1/day | Measured |
| pH (S.U.) | XXX | XXX | 6.0 | XXX | XXX | 9.0 | 1/week | Grab |
| Dissolved Oxygen | XXX | XXX | 5.0 | XXX | XXX | XXX | 2/month | Grab |
| Total Residual Chlorine (TRC) | XXX | XXX | XXX | 0.44 Avg Mo | 1.03 | XXX | 1/week | Grab |
| Biochemical Oxygen Demand (BOD5) | 315.0 Avg Mo | 835.0 | XXX | 24.0 Avg Mo | 64.0 | XXX | 1/week | 24-Hr Composite |
| Total Suspended Solids | 520.0 Avg Mo | 1,685.0 | XXX | 40.0 Avg Mo | 130.0 | XXX | 1/week | 24-Hr Composite |
| Oil and Grease | XXX | XXX | XXX | 15.0 Avg Qrtly | 30.0 | XXX | 2/quarter | Grab |
| Chromium, Total | 14.2 | 35.6 | XXX | 1.11 | 2.77 | XXX | 2/year | 24-Hr Composite |
| Copper, Total | 1.07 Avg Mo | 2.14 | XXX | 0.083 Avg Mo | 0.166 | XXX | 1/week | 24-Hr Composite |
| Cyanide, Total | 5.40 | 15.4 | XXX | 0.420 | 1.20 | XXX | 2/year | 24-Hr Composite |
| Lead, Total | 4.12 Avg Mo | 8.88 | XXX | 0.320 Avg Mo | 0.690 | XXX | 1/week | 24-Hr Composite |
| Nickel, Total | 21.7 Avg Mo | 51.2 | XXX | 1.69 Avg Mo | 3.98 | XXX | 1/week | 24-Hr Composite |

3800-PM-BCW0011    Rev. 9/2016
Permit

Permit No. PA0006254 A-3

**Outfall 002, Continued (from August 1, 2019 through July 31, 2024)**

| Parameter | Effluent Limitations | | | | | | Monitoring Requirements | |
|---|---|---|---|---|---|---|---|---|
| | Mass Units (lbs/day) [1] | | | Concentrations (mg/L unless otherwise indicated) | | | Minimum [2] | Required |
| | Annual Average | Daily Maximum | Instant. Minimum | Annual Average | Daily Maximum | Instant. Maximum | Measurement Frequency | Sample Type |
| Zinc, Total | 6.18 Avg Mo | 12.4 | XXX | 0.480 Avg Mo | 0.960 | XXX | 1/week | 24-Hr Composite |
| 2-Chlorophenol | 0.399 | 1.26 | XXX | 0.031 | 0.098 | XXX | 2/year | 24-Hr Composite |
| 2,4-Dichlorophenol | 0.502 | 1.44 | XXX | 0.039 | 0.112 | XXX | 2/year | 24-Hr Composite |
| 2,4-Dimethylphenol | 0.231 | 0.463 | XXX | 0.018 | 0.036 | XXX | 2/year | 24-Hr Composite |
| Fluorene | 0.283 | 0.759 | XXX | 0.022 | 0.059 | XXX | 2/year | 24-Hr Composite |
| 2,4-Dinitrophenol | 0.914 | 1.58 | XXX | 0.071 | 0.123 | XXX | 2/year | 24-Hr Composite |
| 2,4-Dinitrotoluene | 1.46 | 3.66 | XXX | 0.113 | 0.285 | XXX | 2/year | 24-Hr Composite |
| 2,6-Dinitrotoluene | 3.28 | 8.25 | XXX | 0.255 | 0.641 | XXX | 2/year | 24-Hr Composite |
| 4,6-dinitro-o-cresol | 1.00 | 3.56 | XXX | 0.078 | 0.277 | XXX | 2/year | 24-Hr Composite |
| 2-Nitrophenol | 0.527 | 0.888 | XXX | 0.041 | 0.069 | XXX | 2/year | 24-Hr Composite |
| 4-Nitrophenol | 0.927 | 1.59 | XXX | 0.072 | 0.124 | XXX | 2/year | 24-Hr Composite |
| Phenol | 0.193 Avg Mo | 0.334 | XXX | 0.015 Avg Mo | 0.026 | XXX | 1/week | 24-Hr Composite |
| Acenaphthene | 0.283 | 0.759 | XXX | 0.022 | 0.059 | XXX | 2/year | 24-Hr Composite |
| Acenaphthylene | 0.283 | 0.759 | XXX | 0.022 | 0.059 | XXX | 2/year | 24-Hr Composite |
| Acrolein | 0.078 Avg Qrtly | 0.121 | XXX | 0.0060 Avg Qrtly | 0.0094 | XXX | 2/quarter | 4 Grabs/24 Hours |
| Acrylonitrile | 0.816 | 1.27 | XXX | 0.063 | 0.098 | XXX | 2/year | 4 Grabs/24 Hours |
| Anthracene | 0.283 | 0.759 | XXX | 0.022 | 0.059 | XXX | 2/year | 24-Hr Composite |
| Chlorobenzene | 0.193 | 0.360 | XXX | 0.015 | 0.028 | XXX | 2/year | 4 Grabs/24 Hours |

4

Permit No. PA0006254 A-3

**Outfall 002 , Continued (from <u>August 1, 2019</u> through <u>July 31, 2024</u> )**

| Parameter | Effluent Limitations | | | | | | Monitoring Requirements | |
|---|---|---|---|---|---|---|---|---|
| | Mass Units (lbs/day) [1] | | | Concentrations (mg/L unless otherwise indicated) | | | Minimum [2] | Required |
| | Annual Average | Daily Maximum | Instant. Minimum | Annual Average | Daily Maximum | Instant. Maximum | Measurement Frequency | Sample Type |
| 1,2-Dichlorobenzene | 0.991 | 2.09 | XXX | 0.077 | 0.163 | XXX | 2/year | 4 Grabs/24 Hours |
| 1,3-Dichlorobenzene | 0.399 | 0.566 | XXX | 0.031 | 0.044 | XXX | 2/year | 4 Grabs/24 Hours |
| 1,4-Dichlorobenzene | 0.193 | 0.360 | XXX | 0.015 | 0.028 | XXX | 2/year | 4 Grabs/24 Hours |
| 1,3-Dichloropropylene | 0.373 | 0.566 | XXX | 0.029 | 0.044 | XXX | 2/year | 4 Grabs/24 Hours |
| 1,2,4-Trichlorobenzene | 0.875 | 1.80 | XXX | 0.068 | 0.140 | XXX | 2/year | 24-Hr Composite |
| Ethylbenzene | 0.412 | 1.39 | XXX | 0.032 | 0.108 | XXX | 2/year | 4 Grabs/24 Hours |
| Hexachlorobenzene [3] | 0.004 | 0.006 | XXX | 0.0003 | 0.0005 | XXX | 2/year | 24-Hr Composite |
| Nitrobenzene | 0.347 | 0.875 | XXX | 0.027 | 0.068 | XXX | 2/year | 24-Hr Composite |
| Benzene | 0.476 | 1.75 | XXX | 0.037 | 0.136 | XXX | 2/year | 4 Grabs/24 Hours |
| Benzo(a)Anthracene [3] | 0.013 | 0.020 | XXX | 0.0010 | 0.0016 | XXX | 2/year | 24-Hr Composite |
| Benzo(a)Pyrene | 0.060 | 0.094 | XXX | 0.0047 | 0.0073 | XXX | 2/year | 24-Hr Composite |
| Benzo(k)Fluoranthene | 0.060 | 0.094 | XXX | 0.0047 | 0.0073 | XXX | 2/year | 24-Hr Composite |
| 3,4-Benzofluoranthene | 0.060 | 0.094 | XXX | 0.0047 | 0.0073 | XXX | 2/year | 24-Hr Composite |
| Carbon Tetrachloride | 0.232 | 0.489 | XXX | 0.018 | 0.038 | XXX | 2/year | 4 Grabs/24 Hours |
| Chloroethane | 1.33 | 3.45 | XXX | 0.104 | 0.268 | XXX | 2/year | 4 Grabs/24 Hours |
| 1,1,1-Trichloroethane | 0.270 | 0.695 | XXX | 0.021 | 0.054 | XXX | 2/year | 4 Grabs/24 Hours |
| 1,1,2-Trichloroethane | 0.270 | 0.695 | XXX | 0.021 | 0.054 | XXX | 2/year | 4 Grabs/24 Hours |
| 1,1-Dichloroethane | 0.283 | 0.759 | XXX | 0.022 | 0.059 | XXX | 2/year | 4 Grabs/24 Hours |

3800-PM-BCW0011   Rev. 9/2016
Permit

Permit No. PA0006254 A-3

**Outfall 002, Continued (from** <u>August 1, 2019</u> **through** <u>July 31, 2024</u> **)**

| Parameter | Effluent Limitations | | | | | | Monitoring Requirements | |
|---|---|---|---|---|---|---|---|---|
| | Mass Units (lbs/day) [1] | | | Concentrations (mg/L unless otherwise indicated) | | | Minimum [2] | Required |
| | Annual Average | Daily Maximum | Instant. Minimum | Annual Average | Daily Maximum | Instant. Maximum | Measurement Frequency | Sample Type |
| 1,2-Dichloroethane | 0.875 | 2.71 | XXX | 0.068 | 0.211 | XXX | 2/year | 4 Grabs/24 Hours |
| 1,2-Dichloropropane | 1.97 | 2.96 | XXX | 0.153 | 0.230 | XXX | 2/year | 4 Grabs/24 Hours |
| Bis(2-Ethylhexyl)Phthalate | 1.32 | 3.59 | XXX | 0.103 | 0.279 | XXX | 2/year | 24-Hr Composite |
| Chloroform | 0.270 | 0.592 | XXX | 0.021 | 0.046 | XXX | 2/year | 4 Grabs/24 Hours |
| Chrysene | 0.060 | 0.094 | XXX | 0.0047 | 0.0073 | XXX | 2/year | 24-Hr Composite |
| Diethyl Phthalate | 1.04 | 2.61 | XXX | 0.081 | 0.203 | XXX | 2/year | 24-Hr Composite |
| Dimethyl Phthalate | 0.244 | 0.605 | XXX | 0.019 | 0.047 | XXX | 2/year | 24-Hr Composite |
| Di-n-Butyl Phthalate | 0.347 | 0.733 | XXX | 0.027 | 0.057 | XXX | 2/year | 24-Hr Composite |
| Fluoranthene | 0.321 | 0.875 | XXX | 0.025 | 0.068 | XXX | 2/year | 24-Hr Composite |
| Hexachlorobutadiene | 0.257 | 0.630 | XXX | 0.020 | 0.049 | XXX | 2/year | 24-Hr Composite |
| Hexachloroethane | 0.270 | 0.695 | XXX | 0.021 | 0.054 | XXX | 2/year | 24-Hr Composite |
| Methyl Chloride | 1.11 | 2.44 | XXX | 0.086 | 0.190 | XXX | 2/year | 4 Grabs/24 Hours |
| Methylene Chloride | 0.515 | 1.14 | XXX | 0.040 | 0.089 | XXX | 2/year | 4 Grabs/24 Hours |
| Naphthalene | 0.283 | 0.759 | XXX | 0.022 | 0.059 | XXX | 2/year | 24-Hr Composite |
| Phenanthrene | 0.129 Avg Qrtly | 0.202 | XXX | 0.010 Avg Qrtly | 0.015 | XXX | 2/quarter | 24-Hr Composite |
| Pyrene | 0.321 | 0.862 | XXX | 0.025 | 0.067 | XXX | 2/year | 24-Hr Composite |
| Styrene | XXX | XXX | XXX | Report Avg Qrtly | Report | XXX | 2/quarter | Grab |
| 1,1-Dichloroethylene | 0.206 | 0.321 | XXX | 0.016 | 0.025 | XXX | 2/year | 4 Grabs/24 Hours |

3800-PM-BCW0011   Rev. 9/2016
Permit

Permit No. PA0006254 A-3

**Outfall 002, Continued (from** August 1, 2019 **through** July 31, 2024 **)**

| Parameter | Effluent Limitations | | | | | | Monitoring Requirements | |
|---|---|---|---|---|---|---|---|---|
| | Mass Units (lbs/day) [1] | | Concentrations (mg/L unless otherwise indicated) | | | | Minimum [2] Measurement Frequency | Required Sample Type |
| | Annual Average | Daily Maximum | Instant. Minimum | Annual Average | Daily Maximum | Instant. Maximum | | |
| trans-1,2-Dichloroethylene | 0.270 | 0.695 | XXX | 0.021 | 0.054 | XXX | 2/year | 4 Grabs/24 Hours |
| Tetrachloroethylene | 0.283 | 0.721 | XXX | 0.022 | 0.056 | XXX | 2/year | 4 Grabs/24 Hours |
| Toluene | 0.334 | 1.03 | XXX | 0.026 | 0.080 | XXX | 2/year | 4 Grabs/24 Hours |
| Trichloroethylene | 0.270 | 0.695 | XXX | 0.021 | 0.054 | XXX | 2/year | 4 Grabs/24 Hours |
| Vinyl Chloride | 0.400 | 0.624 | XXX | 0.031 | 0.048 | XXX | 2/year | 4 Grabs/24 Hours |

Samples taken in compliance with the monitoring requirements specified above shall be taken at the following location(s):

at Outfall 002

3800-PM-BCW0011   Rev. 9/2016
Permit

Permit No. PA0006254 A-3

## PART A - EFFLUENT LIMITATIONS, MONITORING, RECORDKEEPING AND REPORTING REQUIREMENTS

I. C.   For Internal Monitoring Point      102

      Receiving Waters:      Raccoon Creek through Outfall 002

      Type of Effluent:      Treated sanitary wastewaters

1. The permittee is authorized to discharge during the period from **August 1, 2019** through **July 31, 2024**.

2. Based on the anticipated wastewater characteristics and flows described in the permit application and its supporting documents and/or amendments, the following effluent limitations and monitoring requirements apply (see also Additional Requirements and Footnotes).

| Parameter | Effluent Limitations | | | | | | Monitoring Requirements | |
| | Mass Units (lbs/day) [1] | | Concentrations (mg/L unless otherwise indicated) | | | | Minimum [2] | Required |
| | Average Monthly | Daily Maximum | Instant. Minimum | Average Monthly | Daily Maximum | Instant. Maximum | Measurement Frequency | Sample Type |
|---|---|---|---|---|---|---|---|---|
| Flow (MGD) | Report | Report | XXX | XXX | XXX | XXX | 1/day | Estimate |
| pH (S.U.) | XXX | XXX | 6.0 | XXX | XXX | 9.0 | 1/day | Grab |
| Total Residual Chlorine (TRC) | XXX | XXX | XXX | 0.5 | XXX | 1.6 | 1/day [4] | Grab |
| Carbonaceous Biochemical Oxygen Demand (CBOD5) | XXX | XXX | XXX | 25 | XXX | 50 | 1/week | 8-Hr Composite |
| Total Suspended Solids | XXX | XXX | XXX | 30 | XXX | 60 | 1/week | 8-Hr Composite |
| Fecal Coliform (No./100 ml) Nov 1 - Apr 30 | XXX | XXX | XXX | 2,000 Geo Mean | XXX | 10,000 | 1/week | Grab |
| Fecal Coliform (No./100 ml) May 1 - Oct 31 | XXX | XXX | XXX | 200 Geo Mean | XXX | 400 | 1/week | Grab |
| Total Nitrogen | XXX | XXX | XXX | XXX | Report | XXX | 1/month | Grab |
| Total Phosphorus | XXX | XXX | XXX | XXX | Report | XXX | 1/month | Grab |
| Ultraviolet light dosage (mWsec/cm²) | XXX | XXX | XXX | XXX | Report | XXX | 1/day | Recorded |

Samples taken in compliance with the monitoring requirements specified above shall be taken at the following location(s):

at Internal Monitoring Point 102

3800-PM-BCW0011   Rev. 9/2016
Permit

Permit No. PA0006254 A-3

## PART A - EFFLUENT LIMITATIONS, MONITORING, RECORDKEEPING AND REPORTING REQUIREMENTS

**I. D.  For Outfall** <u>004</u> **,  Latitude** <u>40° 39' 51.44"</u> **,  Longitude** <u>-80° 21' 1.07"</u> **,  River Mile Index** <u>951.00</u> **,  Stream Code** <u>32317</u>

**Receiving Waters:** <u>Ohio River (WWF)</u>

**Type of Effluent:** <u>River pump house sump contact seal water</u>

1. The permittee is authorized to discharge during the period from **August 1, 2019** through **July 31, 2024**.

2. Based on the anticipated wastewater characteristics and flows described in the permit application and its supporting documents and/or amendments, the following effluent limitations and monitoring requirements apply (see also Additional Requirements and Footnotes).

| Parameter | Effluent Limitations | | | | | | Monitoring Requirements | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Mass Units (lbs/day) [1] | | Concentrations (mg/L unless otherwise indicated) | | | | Minimum [2] | Required |
| | Average Monthly | Daily Maximum | Minimum | Average Monthly | Daily Maximum | Instant. Maximum | Measurement Frequency | Sample Type |
| Discharges shall consist solely of uncontaminated potable/river water leakage. | | | | | | | | |

3800-PM-BCW0011   Rev. 9/2016
Permit                                                                                                              Permit No. PA0006254 A-3

## PART A - EFFLUENT LIMITATIONS, MONITORING, RECORDKEEPING AND REPORTING REQUIREMENTS

I. E.   **For Outfall**    005    ,   **Latitude**   40° 39' 50.43"   ,   **Longitude**   -80° 21' 2.06"   ,   **River Mile Index**   951.00   ,   **Stream Code**   32317

   **Receiving Waters:**   Ohio River (WWF)

   **Type of Effluent:**   River pump house sump contact seal water

1. The permittee is authorized to discharge during the period from **August 1, 2019** through **July 31, 2024**.

2. Based on the anticipated wastewater characteristics and flows described in the permit application and its supporting documents and/or amendments, the following effluent limitations and monitoring requirements apply (see also Additional Requirements and Footnotes).

| Parameter | Effluent Limitations | | | | | | Monitoring Requirements | |
| | Mass Units (lbs/day) [1] | | Concentrations (mg/L unless otherwise indicated) | | | | Minimum [2] | Required |
| | Average Monthly | Daily Maximum | Minimum | Average Monthly | Daily Maximum | Instant. Maximum | Measurement Frequency | Sample Type |
| Discharges shall consist solely of uncontaminated potable/river water leakage. | | | | | | | | |

3800-PM-BCW0011   Rev. 9/2016
Permit                                                                                                                    Permit No. PA0006254 A-3

## PART A - EFFLUENT LIMITATIONS, MONITORING, RECORDKEEPING AND REPORTING REQUIREMENTS

I. F.   **For Outfall** ___006___, **Latitude** __40° 39' 51.44"__, **Longitude** __-80° 21' 1.07"__, **River Mile Index** __951.00__, **Stream Code** __32317__

   **Receiving Waters:**   Ohio River (WWF)

   **Type of Effluent:**   River water used to clean the river intake screens

1. The permittee is authorized to discharge during the period from **August 1, 2019** through **July 31, 2024**.

2. Based on the anticipated wastewater characteristics and flows described in the permit application and its supporting documents and/or amendments, the following effluent limitations and monitoring requirements apply (see also Additional Requirements and Footnotes).

| Parameter | Effluent Limitations | | | | | | Monitoring Requirements | |
| | Mass Units (lbs/day) [1] | | Concentrations (mg/L unless otherwise indicated) | | | | Minimum [2] | Required |
| | Average Monthly | Daily Maximum | Minimum | Average Monthly | Daily Maximum | Instant. Maximum | Measurement Frequency | Sample Type |
| Debris collected on the intake trash racks shall not be returned to the waterway. | | | | | | | | |

3800-PM-BCW0011   Rev. 9/2016
Permit                                                                                                                    Permit No. PA0006254 A-3

## PART A - EFFLUENT LIMITATIONS, MONITORING, RECORDKEEPING AND REPORTING REQUIREMENTS

I. G.  **For Outfall** __007__ , **Latitude** __40° 39' 50.43"__ , **Longitude** __-80° 21' 2.06"__ , **River Mile Index** __951.00__ , **Stream Code** __32317__

   **Receiving Waters:**  Ohio River (WWF)

   **Type of Effluent:**  River water used to clean the river intake screens

1. The permittee is authorized to discharge during the period from **August 1, 2019** through **July 31, 2024**.

2. Based on the anticipated wastewater characteristics and flows described in the permit application and its supporting documents and/or amendments, the following effluent limitations and monitoring requirements apply (see also Additional Requirements and Footnotes).

| Parameter | Effluent Limitations | | | | | | Monitoring Requirements | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Mass Units (lbs/day) [1] | | Concentrations (mg/L unless otherwise indicated) | | | | Minimum [2] | Required |
| | Average Monthly | Daily Maximum | Minimum | Average Monthly | Daily Maximum | Instant. Maximum | Measurement Frequency | Sample Type |
| Debris collected on the intake trash racks shall not be returned to the waterway. | | | | | | | | |

3800-PM-BCW0011   Rev. 2/2020
Permit                                                                                                    Permit No. PA0006254 A-3

| PART A - EFFLUENT LIMITATIONS, MONITORING, RECORDKEEPING AND REPORTING REQUIREMENTS |
|---|

**I. H.  For Outfall** ___020___ **, Latitude** ___40° 39' 15.66"___ **, Longitude** ___-80° 21' 2.74"___ **, River Mile Index** ___0.6100___ **, Stream Code** ___33564___

      **Receiving Waters:**    Raccoon Creek (WWF)

      **Type of Effluent:**    Storm water runoff

1. The permittee is authorized to discharge during the period from **August 1, 2019** through **July 31, 2024**.

2. Based on the anticipated wastewater characteristics and flows described in the permit application and its supporting documents and/or amendments, the following effluent limitations and monitoring requirements apply (see also Additional Requirements and Footnotes).

| Parameter | Effluent Limitations | | | | | | Monitoring Requirements | |
|---|---|---|---|---|---|---|---|---|
| | Mass Units (lbs/day) [1] | | Concentrations (mg/L unless otherwise indicated) | | | | Minimum [2] Measurement Frequency | Required Sample Type |
| | Average Monthly | Daily Maximum | Instant. Minimum | Average Monthly | Daily Maximum | Instant. Maximum | | |
| Flow (MGD) | XXX | Report | XXX | XXX | XXX | XXX | 1/6 months | Estimate |
| pH (S.U.) | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Chemical Oxygen Demand (COD) | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Total Suspended Solids | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Nitrate-Nitrite as N | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Total Phosphorus | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Aluminum, Total | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Chromium, Total | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Copper, Total | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Iron, Total | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Lead, Total | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Zinc, Total | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Benzo(a)Anthracene (ug/L) [3] | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |

**3800-PM-BCW0011   Rev. 2/2020**
**Permit**

**Permit No. PA0006254 A-3**

**Outfall 020 , Continued (from August 1, 2019 through July 31, 2024 )**

| Parameter | Effluent Limitations | | | | | | Monitoring Requirements | |
|---|---|---|---|---|---|---|---|---|
| | Mass Units (lbs/day) [1] | | Concentrations (mg/L unless otherwise indicated) | | | | Minimum [2] Measurement Frequency | Required Sample Type |
| | Average Monthly | Daily Maximum | Instant. Minimum | Average Monthly | Daily Maximum | Instant. Maximum | | |
| Phenanthrene (ug/L) | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |

Samples taken in compliance with the monitoring requirements specified above shall be taken at the following location(s):

at Outfall 020

3800-PM-BCW0011   Rev. 2/2020
Permit                                                                                                    Permit No. PA0006254 A-3

## PART A - EFFLUENT LIMITATIONS, MONITORING, RECORDKEEPING AND REPORTING REQUIREMENTS

I. I.   For Outfall _____021_____ , Latitude _40° 39' 17.47"_ , Longitude _-80° 21' 4.86"_ , River Mile Index _0.5800_ , Stream Code _33564_

   Receiving Waters:   Raccoon Creek (WWF)

   Type of Effluent:   Storm water runoff

1. The permittee is authorized to discharge during the period from **August 1, 2019** through **July 31, 2024**.

2. Based on the anticipated wastewater characteristics and flows described in the permit application and its supporting documents and/or amendments, the following effluent limitations and monitoring requirements apply (see also Additional Requirements and Footnotes).

| Parameter | Effluent Limitations | | | | | | Monitoring Requirements | |
| | Mass Units (lbs/day) [1] | | Concentrations (mg/L unless otherwise indicated) | | | | Minimum [2] | Required |
| | Average Monthly | Daily Maximum | Instant. Minimum | Average Monthly | Daily Maximum | Instant. Maximum | Measurement Frequency | Sample Type |
|---|---|---|---|---|---|---|---|---|
| Flow (MGD) | XXX | Report | XXX | XXX | XXX | XXX | 1/6 months | Estimate |
| pH (S.U.) | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Chemical Oxygen Demand (COD) | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Total Suspended Solids | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Nitrate-Nitrite as N | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Total Phosphorus | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Aluminum, Total | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Chromium, Total | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Copper, Total | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Iron, Total | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Lead, Total | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Zinc, Total | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Benzo(a)Anthracene (ug/L) [3] | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |

**3800-PM-BCW0011   Rev. 2/2020**
**Permit**

**Permit No. PA0006254 A-3**

**Outfall 021 , Continued (from <u>August 1, 2019</u> through <u>July 31, 2024</u> )**

| Parameter | Effluent Limitations | | | | | | Monitoring Requirements | |
|---|---|---|---|---|---|---|---|---|
| | Mass Units (lbs/day) [1] | | Concentrations (mg/L unless otherwise indicated) | | | | Minimum [2] Measurement Frequency | Required Sample Type |
| | Average Monthly | Daily Maximum | Instant. Minimum | Average Monthly | Daily Maximum | Instant. Maximum | | |
| Phenanthrene (ug/L) | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |

Samples taken in compliance with the monitoring requirements specified above shall be taken at the following location(s):

at Outfall 021

3800-PM-BCW0011   Rev. 2/2020
Permit

Permit No. PA0006254 A-3

## PART A - EFFLUENT LIMITATIONS, MONITORING, RECORDKEEPING AND REPORTING REQUIREMENTS

I. J.   For Outfall     025     ,   Latitude     40° 39' 22.49"     ,   Longitude     -80° 21' 2.94"     ,   River Mile Index     0.4800     ,   Stream Code     33564

Receiving Waters:     Raccoon Creek (WWF)

Type of Effluent:     Storm water runoff

1. The permittee is authorized to discharge during the period from **August 1, 2019** through **July 31, 2024**.

2. Based on the anticipated wastewater characteristics and flows described in the permit application and its supporting documents and/or amendments, the following effluent limitations and monitoring requirements apply (see also Additional Requirements and Footnotes).

| Parameter | Effluent Limitations | | | | | | Monitoring Requirements | |
|---|---|---|---|---|---|---|---|---|
| | Mass Units (lbs/day) [1] | | Concentrations (mg/L unless otherwise indicated) | | | | Minimum [2] Measurement Frequency | Required Sample Type |
| | Average Monthly | Daily Maximum | Instant. Minimum | Average Monthly | Daily Maximum | Instant. Maximum | | |
| Flow (MGD) | XXX | Report | XXX | XXX | XXX | XXX | 1/6 months | Estimate |
| pH (S.U.) | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Chemical Oxygen Demand (COD) | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Total Suspended Solids | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Nitrate-Nitrite as N | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Total Phosphorus | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Aluminum, Total | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Chromium, Total | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Copper, Total | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Iron, Total | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Lead, Total | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Zinc, Total | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |
| Benzo(a)Anthracene (ug/L) [3] | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |

3800-PM-BCW0011   Rev. 2/2020
Permit

Permit No. PA0006254 A-3

**Outfall 025 , Continued (from <u>August 1, 2019</u> through <u>July 31, 2024</u> )**

| Parameter | Effluent Limitations | | | | | | Monitoring Requirements | |
|---|---|---|---|---|---|---|---|---|
| | Mass Units (lbs/day) [1] | | Concentrations (mg/L unless otherwise indicated) | | | | Minimum [2] | Required |
| | Average Monthly | Daily Maximum | Instant. Minimum | Average Monthly | Daily Maximum | Instant. Maximum | Measurement Frequency | Sample Type |
| Phenanthrene (ug/L) | XXX | XXX | XXX | XXX | Report | XXX | 1/6 months | Grab |

Samples taken in compliance with the monitoring requirements specified above shall be taken at the following location(s):

 at Outfall 025

3800-PM-BCW0011   Rev. 2/2020
Permit

Permit No. PA0006254 A-3

**PART A - EFFLUENT LIMITATIONS, MONITORING, RECORDKEEPING AND REPORTING REQUIREMENTS (Continued)**

Additional Requirements

The permittee may not discharge:

1. Floating solids, scum, sheen or substances that result in observed deposits in the receiving water. (25 Pa Code § 92a.41(c))

2. Oil and grease in amounts that cause a film or sheen upon or discoloration of the waters of this Commonwealth or adjoining shoreline, or that exceed 15 mg/l as a daily average or 30 mg/l at any time (or lesser amounts if specified in this permit).  (25 Pa. Code § 92a.47(a)(7), § 95.2(2))

3. Substances in concentration or amounts sufficient to be inimical or harmful to the water uses to be protected or to human, animal, plant or aquatic life. (25 Pa Code § 93.6(a))

4. Foam or substances that produce an observed change in the color, taste, odor or turbidity of the receiving water, unless those conditions are otherwise controlled through effluent limitations or other requirements in this permit.  For the purpose of determining compliance with this condition, DEP will compare conditions in the receiving water upstream of the discharge to conditions in the receiving water approximately 100 feet downstream of the discharge to determine if there is an observable change in the receiving water.  (25 Pa Code § 92a.41(c))

Footnotes

(1) When sampling to determine compliance with mass effluent limitations, the discharge flow at the time of sampling must be measured and recorded.

(2) This is the minimum number of sampling events required.  Permittees are encouraged, and it may be advantageous in demonstrating compliance, to perform more than the minimum number of sampling events.

Parameters with a minimum measurement frequency of 2/quarter or 2/year shall be sampled during the same calendar month to calculate an average.

(3) Refer to Condition III in Part C of this permit for requirements applicable to Benzo(a)Anthracene and Hexachlorobenzene.

(4) Sampling and analysis for Total Residual Chlorine shall be conducted daily at times when chlorine is being used for disinfection in place of ultraviolet light.

Supplemental Information

The effluent limitations for Outfalls 001 and 002 were determined using effluent discharge rates of 15 MGD and 1.543 MGD, respectively.

3800-PM-BCW0011   Rev. 2/2020
Permit                                                                                    Permit No. PA0006254 A-3

## II.   DEFINITIONS

*At Outfall (XXX)* means a sampling location in outfall line XXX below the last point at which wastes are added to outfall line (XXX), or where otherwise specified.

*Average* refers to the use of an arithmetic mean, unless otherwise specified in this permit. (40 CFR 122.41(l)(4)(iii))

*Best Management Practices* (BMPs) means schedules of activities, prohibitions of practices, maintenance procedures and other management practices to prevent or reduce the pollutant loading to surface waters of the Commonwealth.  The term also includes treatment requirements, operating procedures and practices to control plant site runoff, spillage or leaks, sludge or waste disposal, or drainage from raw material storage.  The term includes activities, facilities, measures, planning or procedures used to minimize accelerated erosion and sedimentation and manage stormwater to protect, maintain, reclaim, and restore the quality of waters and the existing and designated uses of waters within this Commonwealth before, during and after earth disturbance activities. (25 Pa. Code § 92a.2)

*Bypass* means the intentional diversion of waste streams from any portion of a treatment facility. (40 CFR 122.41(m)(1)(i))

*Calendar Week* is defined as the seven consecutive days from Sunday through Saturday, unless the permittee has been given permission by DEP to provide weekly data as Monday through Friday based on showing excellent performance of the facility and a history of compliance. In cases when the week falls in two separate months, the month with the most days in that week shall be the month for reporting.

*Clean Water Act* means the Federal Water Pollution Control Act, as amended. (33 U.S.C.A. §§ 1251 to 1387).

*Chemical Additive* means a chemical product (including products of disassociation and degradation, collectively "products") introduced into a waste stream that is used for cleaning, disinfecting, or maintenance and which may be detected in effluent discharged to waters of the Commonwealth.  The term generally excludes chemicals used for neutralization of waste streams, the production of goods, and treatment of wastewater.

*Composite Sample* (for all except GC/MS volatile organic analysis) means a combination of individual samples (at least eight for a 24-hour period or four for an 8-hour period) of at least 100 milliliters (mL) each obtained at spaced time intervals during the compositing period.  The composite must be flow-proportional; either the volume of each individual sample is proportional to discharge flow rates, or the sampling interval is proportional to the flow rates over the time period used to produce the composite. (EPA Form 2C)

*Composite Sample* (for GC/MS volatile organic analysis) consists of at least four aliquots or grab samples collected during the sampling event (not necessarily flow proportioned).   A separate analysis should be performed for each sample and the results should be averaged.

*Daily Average Temperature* means the average of all temperature measurements made, or the mean value plot of the record of a continuous automated temperature recording instrument, either during a calendar day or during the operating day if flows are of a shorter duration.

*Daily Discharge* means the discharge of a pollutant measured during a calendar day or any 24-hour period that reasonably represents the calendar day for purposes of sampling.  For pollutants with limitations expressed in units of mass, the "daily discharge" is calculated as the total mass of the pollutant discharged over the day.  For pollutants with limitations expressed in other units of measurement, the "daily discharge" is calculated as the average measurement of the pollutant over the day. (25 Pa. Code § 92a.2, 40 CFR 122.2)

*Daily Maximum Discharge Limitation* means the highest allowable "daily discharge."

*Discharge Monitoring Report* (DMR) means the DEP or EPA supplied form(s) for the reporting of self-monitoring results by the permittee. (25 Pa. Code § 92a.2, 40 CFR 122.2)

*Estimated Flow* means any method of liquid volume measurement based on a technical evaluation of the sources contributing to the discharge including, but not limited to, pump capabilities, water meters and batch discharge volumes.

*Geometric Mean* means the average of a set of n sample results given by the nth root of their product.

*Grab Sample* means an individual sample of at least 100 mL collected at a randomly selected time over a period not to exceed 15 minutes. (EPA Form 2C)

*Hazardous Substance* means any substance designated under 40 CFR Part 116 pursuant to Section 311 of the Clean Water Act. (40 CFR 122.2)

*Hauled-In Wastes* means any waste that is introduced into a treatment facility through any method other than a direct connection to the wastewater collection system.  The term includes wastes transported to and disposed of within the treatment facility or other entry points within the collection system.

*Immersion Stabilization* (i-s) means a calibrated device is immersed in the wastewater until the reading is stabilized.

*Instantaneous Maximum Effluent Limitation* means the highest allowable discharge of a concentration or mass of a substance at any one time as measured by a grab sample. (25 Pa. Code § 92a.2)

*Measured Flow* means any method of liquid volume measurement, the accuracy of which has been previously demonstrated in engineering practice, or for which a relationship to absolute volume has been obtained.

*Monthly Average Discharge Limitation* means the highest allowable average of "daily discharges" over a calendar month, calculated as the sum of all "daily discharges" measured during a calendar month divided by the number of "daily discharges" measured during that month. (25 Pa. Code § 92a.2)

*Municipal Waste* means garbage, refuse, industrial lunchroom or office waste and other material, including solid, liquid, semisolid or contained gaseous material resulting from operation of residential, municipal, commercial or institutional establishments and from community activities; and sludge not meeting the definition of residual or hazardous waste under this section from a municipal, commercial or institutional water supply treatment plant, waste water treatment plant or air pollution control facility. (25 Pa. Code § 271.1)

*Non-contact Cooling Water* means water used to reduce temperature which does not come in direct contact with any raw material, intermediate product, waste product (other than heat), or finished product.

*Residual Waste* means garbage, refuse, other discarded material or other waste, including solid, liquid, semisolid or contained gaseous materials resulting from industrial, mining and agricultural operations and sludge from an industrial, mining or agricultural water supply treatment facility, wastewater treatment facility or air pollution control facility, if it is not hazardous. The term does not include coal refuse as defined in the Coal Refuse Disposal Control Act. The term does not include treatment sludges from coal mine drainage treatment plants, disposal of which is being carried on under and in compliance with a valid permit issued under the Clean Streams Law. (25 Pa Code § 287.1)

*Severe Property Damage* means substantial physical damage to property, damage to the treatment facilities that causes them to become inoperable, or substantial and permanent loss of natural resources that can reasonably be expected to occur in the absence of a bypass.  Severe property damage does not mean economic loss caused by delays in production. (40 CFR 122.41(m)(1)(ii))

*Stormwater* means the runoff from precipitation, snow melt runoff, and surface runoff and drainage. (25 Pa. Code § 92a.2)

*Stormwater Associated With Industrial Activity* means the discharge from any conveyance that is used for collecting and conveying stormwater and that is directly related to manufacturing, processing, or raw materials storage areas at an industrial plant, and as defined at 40 CFR 122.26(b)(14) (i) - (ix) & (xi) and 25 Pa. Code § 92a.2.

3800-PM-BCW0011   Rev. 2/2020
Permit

*Total Dissolved Solids* means the total dissolved (filterable) solids as determined by use of the method specified in 40 CFR Part 136.

*Toxic Pollutant* means those pollutants, or combinations of pollutants, including disease-causing agents, which after discharge and upon exposure, ingestion, inhalation or assimilation into any organism, either directly from the environment or indirectly by ingestion through food chains may, on the basis of information available to DEP cause death, disease, behavioral abnormalities, cancer, genetic mutations, physiological malfunctions, including malfunctions in reproduction, or physical deformations in these organisms or their offspring. (25 Pa. Code § 92a.2)

3800-PM-BCW0011   Rev. 2/2020
Permit

Permit No. PA0006254 A-3

III.   **SELF-MONITORING, REPORTING AND RECORDKEEPING**

A.   Representative Sampling

1.   Samples and measurements taken for the purpose of monitoring shall be representative of the monitored activity (40 CFR 122.41(j)(1)).   Representative sampling includes the collection of samples, where possible, during periods of adverse weather, changes in treatment plant performance and changes in treatment plant loading.  If possible, effluent samples must be collected where the effluent is well mixed near the center of the discharge conveyance and at the approximate mid-depth point, where the turbulence is at a maximum and the settlement of solids is minimized. (40 CFR 122.48, 25 Pa. Code § 92a.61)

2.   Records Retention (40 CFR 122.41(j)(2))

Except for records of monitoring information required by this permit related to the permittee's sludge use and disposal activities which shall be retained for a period of at least 5 years, all records of monitoring activities and results (including all original strip chart recordings for continuous monitoring instrumentation and calibration and maintenance records), copies of all reports required by this permit, and records of all data used to complete the application for this permit shall be retained by the permittee for 3 years from the date of the sample measurement, report or application, unless a longer retention period is required by the permit.  The 3-year period shall be extended as requested by DEP or the EPA Regional Administrator.

3.   Recording of Results (40 CFR 122.41(j)(3))

For each measurement or sample taken pursuant to the requirements of this permit, the permittee shall record the following information:

a.   The exact place, date and time of sampling or measurements.
b.   The person(s) who performed the sampling or measurements.
c.   The date(s) the analyses were performed.
d.   The person(s) who performed the analyses.
e.   The analytical techniques or methods used; and the associated detection level.
f.   The results of such analyses.

4.   Test Procedures

a.   Facilities that test or analyze environmental samples used to demonstrate compliance with this permit shall be in compliance with laboratory accreditation requirements of Act 90 of 2002 (27 Pa. C.S. §§ 4101-4113) and 25 Pa. Code Chapter 252, relating to environmental laboratory accreditation.

b.   Test procedures (methods) for the analysis of pollutants or pollutant parameters shall be those approved under 40 CFR Part 136 or required under 40 CFR Chapter I, Subchapters N or O, unless the method is specified in this permit or has been otherwise approved in writing by DEP. (40 CFR 122.41(j)(4), 122.44(i)(1)(iv))

c.   Test procedures (methods) for the analysis of pollutants or pollutant parameters shall be sufficiently sensitive.  A method is sufficiently sensitive when 1) the method minimum level is at or below the level of the effluent limit established in the permit for the measured pollutant or pollutant parameter; or 2) the method has the lowest minimum level of the analytical methods approved under 40 CFR Part 136 or required under 40 CFR Chapter I, Subchapters N or O, for the measured pollutant or pollutant parameter; or 3) the method is specified in this permit or has been otherwise approved in writing by DEP for the measured pollutant or pollutant parameter.  Permittees have the option of providing matrix or sample-specific minimum levels rather than the published levels. (40 CFR 122.44(i)(1)(iv))

5.   Quality/Assurance/Control

In an effort to assure accurate self-monitoring analyses results:

a. The permittee, or its designated laboratory, shall participate in the periodic scheduled quality assurance inspections conducted by DEP and EPA. (40 CFR 122.41(e), 122.41(i)(3))

b. The permittee, or its designated laboratory, shall develop and implement a program to assure the quality and accurateness of the analyses performed to satisfy the requirements of this permit, in accordance with 40 CFR Part 136. (40 CFR 122.41(j)(4))

B. Reporting of Monitoring Results

1. The permittee shall effectively monitor the operation and efficiency of all wastewater treatment and control facilities, and the quantity and quality of the discharge(s) as specified in this permit. (25 Pa. Code §§ 92a.3(c), 92a.41(a), 92a.44, 92a.61(i) and 40 CFR §§ 122.41(e), 122.44(i)(1))

2. The permittee shall use DEP's electronic Discharge Monitoring Report (eDMR) system to report the results of compliance monitoring under this permit (see www.dep.pa.gov/edmr).  Permittees that are not using the eDMR system as of the effective date of this permit shall submit the necessary registration and trading partner agreement forms to DEP's Bureau of Clean Water (BCW) within 30 days of the effective date of this permit and begin using the eDMR system when notified by DEP BCW to do so.   (25 Pa. Code §§ 92a.3(c), 92a.41(a), 92a.61(g) and 40 CFR § 122.41(l)(4))

3. Submission of a physical (paper) copy of a Discharge Monitoring Report (DMR) is acceptable under the following circumstances:

a. For a permittee that is not yet using the eDMR system, the permittee shall submit a physical copy of a DMR to the DEP regional office that issued the permit during the interim period between the submission of registration and trading partner agreement forms to DEP and DEP's notification to begin using the eDMR system.

b. For any permittee, as a contingency a physical DMR may be mailed to the DEP regional office that issued the permit if there are technological malfunction(s) that prevent the successful submission of a DMR through the eDMR system.  In such situations, the permittee shall submit the DMR through the eDMR system within 5 days following remedy of the malfunction(s).

4. DMRs must be completed in accordance with DEP's published DMR instructions (3800-FM-BCW0463). DMRs must be received by DEP no later than 28 days following the end of the monitoring period.  DMRs are based on calendar reporting periods and must be received by DEP in accordance with the following schedule:

- Monthly DMRs must be received within 28 days following the end of each calendar month.
- Quarterly DMRs must be received within 28 days following the end of each calendar quarter, i.e., January 28, April 28, July 28, and October 28.
- Semiannual DMRs must be received within 28 days following the end of each calendar semiannual period, i.e., January 28 and July 28.
- Annual DMRs must be received by January 28, unless Part C of this permit requires otherwise.

5. The permittee shall complete all Supplemental Reporting forms (Supplemental DMRs) attached to this permit, or an approved equivalent, and submit the signed, completed forms as attachments to the DMR, through DEP's eDMR system.  DEP's Supplemental Laboratory Accreditation Form (3800-FM-BCW0189) must be completed and submitted to DEP with the first DMR following issuance of this permit, and anytime thereafter when changes to laboratories or methods occur. (25 Pa. Code §§ 92a.3(c), 92a.41(a), 92a.61(g) and 40 CFR § 122.41(l)(4))

6. The completed DMR Form shall be signed and certified by either of the following applicable persons, as defined in 25 Pa. Code § 92a.22:

- For a corporation - by a principal executive officer of at least the level of vice president, or an authorized representative, if the representative is responsible for the overall operation of the facility from which the discharge described in the NPDES form originates.
- For a partnership or sole proprietorship - by a general partner or the proprietor, respectively.
- For a municipality, state, federal or other public agency - by a principal executive officer or ranking elected official.

If signed by a person other than the above and for co-permittees, written notification of delegation of DMR signatory authority must be submitted to DEP in advance of or along with the relevant DMR form. (40 CFR § 122.22(b))

7. If the permittee monitors any pollutant at monitoring points as designated by this permit, using analytical methods described in Part A III.A.4. herein, more frequently than the permit requires, the results of this monitoring shall be incorporated, as appropriate, into the calculations used to report self-monitoring data on the DMR.  (40 CFR 122.41(l)(4)(ii))

C.  Reporting Requirements

1. Planned Changes to Physical Facilities – The permittee shall give notice to DEP as soon as possible but no later than 30 days prior to planned physical alterations or additions to the permitted facility.  A permit under 25 Pa. Code Chapter 91 may be required for these situations prior to implementing the planned changes.  A permit application, or other written submission to DEP, can be used to satisfy the notification requirements of this section.

    Notice is required when:

    a. The alteration or addition to a permitted facility may meet one of the criteria for determining whether a facility is a new source in 40 CFR 122.29(b).  (40 CFR 122.41(l)(1)(i))

    b. The alteration or addition could significantly change the nature or increase the quantity of pollutants discharged.  This notification applies to pollutants which are not subject to effluent limitations in this permit.  (40 CFR 122.41(l)(1)(ii))

    c. The alteration or addition results in a significant change in the permittee's sludge use or disposal practices, and such alteration, addition, or change may justify the application of permit conditions that are different from or absent in the existing permit, including notification of additional use or disposal sites not reported during the permit application process or not reported pursuant to an approved land application plan.  (40 CFR 122.41(l)(1)(iii))

    d. The planned change may result in noncompliance with permit requirements.  (40 CFR 122.41(l)(2))

2. Planned Changes to Waste Stream – Under the authority of 25 Pa. Code § 92a.24(a), the permittee shall provide notice to DEP as soon as possible but no later than 45 days prior to any planned changes in the volume or pollutant concentration of its influent waste stream, as specified in paragraphs 2.a. and 2.b., below.  Notice shall be provided on the "Planned Changes to Waste Stream" Supplemental Report (3800-FM-BCW0482), available on DEP's website.  The permittee shall provide information on the quality and quantity of waste introduced into the facility, and any anticipated impact of the change on the quantity or quality of effluent to be discharged from the facility.  The Report shall be sent via Certified Mail or other means to confirm DEP's receipt of the notification.  DEP will determine if the submission of a new application and receipt of a new or amended permit is required.

    a. Introduction of New Pollutants (25 Pa. Code § 92a.24(a))

        New pollutants are defined as parameters that meet all of the following criteria:

        (i) Were not detected in the facilities' influent waste stream as reported in the permit application; and

(ii)  Have not been approved to be included in the permittee's influent waste stream by DEP in writing.

The permittee shall provide notification of the introduction of new pollutants in accordance with paragraph 2 above.  The permittee may not authorize the introduction of new pollutants until the permittee receives DEP's written approval.

b.  Increased Loading of Approved Pollutants (25 Pa. Code § 92a.24(a))

Approved pollutants are defined as parameters that meet one or more of the following criteria:

(i)  Were detected in the facilities' influent waste stream as reported in the permittee's permit application; or

(ii)  Have been approved to be included in the permittee's influent waste stream by DEP in writing; or

(iii)  Have an effluent limitation or monitoring requirement in this permit.

The permittee shall provide notification of the introduction of increased influent loading (lbs/day) of approved pollutants in accordance with paragraph 2 above when (1) the cumulative increase in influent loading (lbs/day) exceeds 20% of the maximum loading reported in the permit application, or a loading previously approved by DEP, or (2) may cause an exceedance in the effluent of Effluent Limitation Guidelines (ELGs) or limitations in Part A of this permit, or (3) may cause interference or pass through at the facility (as defined at 40 CFR 403.3), or (4) may cause exceedances of the applicable water quality standards in the receiving stream.  Unless specified otherwise in this permit, if DEP does not respond to the notification within 30 days of its receipt, the permittee may proceed with the increase in loading.  The acceptance of increased loading of approved pollutants may not result in an exceedance of ELGs or effluent limitations and may not cause exceedances of the applicable water quality standards in the receiving stream.

3.  Reporting Requirements for Hauled-In Wastes

a.  Receipt of Residual Waste

(i)  The permittee shall document the receipt of all hauled-in residual wastes (including but not limited to wastewater from oil and gas wells, food processing waste, and landfill leachate), as defined at 25 Pa. Code § 287.1, that are received for processing at the treatment facility.  The permittee shall report hauled-in residual wastes on a monthly basis to DEP on the "Hauled In Residual Wastes" Supplemental Report (3800-FM-BCW0450) as an attachment to the DMR.  If no residual wastes were received during a month, submission of the Supplemental Report is not required.

The following information is required by the Supplemental Report.  The information used to develop the Report shall be retained by the permittee for five years from the date of receipt and must be made available to DEP or EPA upon request.

(1)  The dates that residual wastes were received.

(2)  The volume (gallons) of wastes received.

(3)  The license plate number of the vehicle transporting the waste to the treatment facility.

(4)  The permit number(s) of the well(s) where residual wastes were generated, if applicable.

(5)  The name and address of the generator of the residual wastes.

(6)  The type of wastewater.

The transporter of residual waste must maintain these and other records as part of the daily operational record (25 Pa. Code § 299.219).  If the transporter is unable to provide this information or the permittee has not otherwise received the information from the generator, the residual wastes shall not be accepted by the permittee until such time as the permittee receives such information from the transporter or generator.

(ii) The following conditions apply to the characterization of residual wastes received by the permittee:

(1) If the generator is required to complete a chemical analysis of residual wastes in accordance with 25 Pa. Code § 287.51, the permittee must receive and maintain on file a chemical analysis of the residual wastes it receives.  The chemical analysis must conform to the Bureau of Waste Management's Form 26R except as noted in paragraph (2), below.  Each load of residual waste received must be covered by a chemical analysis if the generator is required to complete it.

(2) For wastewater generated from hydraulic fracturing operations ("frac wastewater") within the first 30 production days of a well site, the chemical analysis may be a general frac wastewater characterization approved by DEP.  Thereafter, the chemical analysis must be waste-specific and be reported on the Form 26R.

b.   Receipt of Municipal Waste

(i) The permittee shall document the receipt of all hauled-in municipal wastes (including but not limited to septage and liquid sewage sludge), as defined at 25 Pa. Code § 271.1, that are received for processing at the treatment facility.  The permittee shall report hauled-in municipal wastes on a monthly basis to DEP on the "Hauled In Municipal Wastes" Supplemental Report (3800-FM-BCW0437) as an attachment to the DMR.  If no municipal wastes were received during a month, submission of the Supplemental Report is not required.

The following information is required by the Supplemental Report:

(1) The dates that municipal wastes were received.

(2) The volume (gallons) of wastes received.

(3) The $BOD_5$ concentration (mg/l) and load (lbs) for the wastes received.

(4) The location(s) where wastes were disposed of within the treatment facility.

(ii) Sampling and analysis of hauled-in municipal wastes must be completed to characterize the organic strength of the wastes, unless composite sampling of influent wastewater is performed at a location downstream of the point of entry for the wastes.

4.   Unanticipated Noncompliance or Potential Pollution Reporting

a.   Immediate Reporting - The permittee shall immediately report any incident causing or threatening pollution in accordance with the requirements of 25 Pa. Code §§ 91.33 and 92a.41(b).

(i) If, because of an accident, other activity or incident a toxic substance or another substance which would endanger users downstream from the discharge, or would otherwise result in pollution or create a danger of pollution or would damage property, the permittee shall immediately notify DEP by telephone of the location and nature of the danger.  Oral notification to the Department is required as soon as possible, but no later than 4 hours after the permittee becomes aware of the incident causing or threatening pollution.

(ii) If reasonably possible to do so, the permittee shall immediately notify downstream users of the waters of the Commonwealth to which the substance was discharged. Such notice shall include the location and nature of the danger.

(iii) The permittee shall immediately take or cause to be taken steps necessary to prevent injury to property and downstream users of the waters from pollution or a danger of pollution and, in addition, within 15 days from the incident, shall remove the residual substances contained thereon or therein from the ground and from the affected waters of this Commonwealth to the extent required by applicable law.

b. The permittee shall report any noncompliance which may endanger health or the environment in accordance with the requirements of 40 CFR 122.41(l)(6). These requirements include the following obligations:

(i) 24 Hour Reporting - The permittee shall orally report any noncompliance with this permit which may endanger health or the environment within 24 hours from the time the permittee becomes aware of the circumstances. The following shall be included as information which must be reported within 24 hours under this paragraph:

(1) Any unanticipated bypass which exceeds any effluent limitation in the permit;

(2) Any upset which exceeds any effluent limitation in the permit; and

(3) Violation of the maximum daily discharge limitation for any of the pollutants listed in the permit as being subject to the 24-hour reporting requirement. (40 CFR 122.44(g))

(ii) Written Report - A written submission shall also be provided within 5 days of the time the permittee becomes aware of any noncompliance which may endanger health or the environment. The written submission shall contain a description of the noncompliance and its cause; the period of noncompliance, including exact dates and times, and if the noncompliance has not been corrected, the anticipated time it is expected to continue; and steps taken or planned to reduce, eliminate, and prevent reoccurrence of the noncompliance.

(iii) Waiver of Written Report - DEP may waive the written report on a case-by-case basis if the associated oral report has been received within 24 hours from the time the permittee becomes aware of the circumstances which may endanger health or the environment. Unless such a waiver is expressly granted by DEP, the permittee shall submit a written report in accordance with this paragraph. (40 CFR 122.41(l)(6)(iii))

5. Other Noncompliance

The permittee shall report all instances of noncompliance not reported under paragraph C.4 of this section or specific requirements of compliance schedules, at the time DMRs are submitted, on the Non-Compliance Reporting Form (3800-FM-BCW0440). The reports shall contain the information listed in paragraph C.4.b.(ii) of this section. (40 CFR 122.41(l)(7))

D. Specific Toxic Pollutant Notification Levels (for Manufacturing, Commercial, Mining, and Silvicultural Direct Dischargers) - The permittee shall notify DEP as soon as it knows or has reason to believe the following: (40 CFR 122.42(a))

1. That any activity has occurred, or will occur, which would result in the discharge of any toxic pollutant which is not limited in this permit, if that discharge on a routine or frequent basis will exceed the highest of the following "notification levels": (40 CFR 122.42(a)(1))

a. One hundred micrograms per liter.

b. Two hundred micrograms per liter for acrolein and acrylonitrile.

3800-PM-BCW0011   Rev. 2/2020
Permit

**Permit No. PA0006254 A-3**

    c.   Five hundred micrograms per liter for 2,4-dinitrophenol and 2-methyl-4,6-dinitrophenol.

    d.   One milligram per liter for antimony.

    e.   Five times the maximum concentration value reported for that pollutant in this permit application.

    f.   Any other notification level established by DEP.

2.   That any activity has occurred or will occur which would result in any discharge, on a nonroutine or infrequent basis, of a toxic pollutant which is not limited in this permit, if that discharge will exceed the highest of the following "notification levels": (40 CFR 122.42(a)(2))

    a.   Five hundred micrograms per liter.

    b.   One milligram per liter for antimony.

    c.   Ten times the maximum concentration value reported for that pollutant in the permit application.

    d.   Any other notification level established by DEP.

3800-PM-BCW0011   Rev. 2/2020
Permit

Permit No. PA0006254 A-3

| PART B |
| --- |

**I.   MANAGEMENT REQUIREMENTS**

A.   Compliance

1.   The permittee shall comply with all conditions of this permit.  If a compliance schedule has been established in this permit, the permittee shall achieve compliance with the terms and conditions of this permit within the time frames specified in this permit.  (40 CFR 122.41(a)(1))

2.   The permittee shall submit reports of compliance or noncompliance, or progress reports as applicable, for any interim and final requirements contained in this permit.  Such reports shall be submitted no later than 14 days following the applicable schedule date or compliance deadline. (25 Pa. Code § 92a.51(c), 40 CFR 122.47(a)(4))

B.   Permit Modification, Termination, or Revocation and Reissuance

1.   This permit may be modified, terminated, or revoked and reissued during its term in accordance with 25 Pa. Code § 92a.72 and 40 CFR 122.41(f).

2.   The filing of a request by the permittee for a permit modification, revocation and reissuance, or termination, or a notification of planned changes or anticipated noncompliance, does not stay any permit condition. (40 CFR 122.41(f))

3.   In the absence of DEP action to modify or revoke and reissue this permit, the permittee shall comply with effluent standards or prohibitions established under Section 307(a) of the Clean Water Act for toxic pollutants within the time specified in the regulations that establish those standards or prohibitions. (40 CFR 122.41(a)(1))

C.   Duty to Provide Information

1.   The permittee shall furnish to DEP, within a reasonable time, any information which DEP may request to determine whether cause exists for modifying, revoking and reissuing, or terminating this permit, or to determine compliance with this permit. (40 CFR 122.41(h))

2.   The permittee shall furnish to DEP, upon request, copies of records required to be kept by this permit. (40 CFR 122.41(h))

3.   Other Information - Where the permittee becomes aware that it failed to submit any relevant facts in a permit application, or submitted incorrect information in a permit application or in any report to DEP, it shall promptly submit the correct and complete facts or information. (40 CFR 122.41(l)(8))

D.   Proper Operation and Maintenance

The permittee shall at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the terms and conditions of this permit.  Proper operation and maintenance includes, but is not limited to, adequate laboratory controls including appropriate quality assurance procedures.  This provision also includes the operation of backup or auxiliary facilities or similar systems that are installed by the permittee, only when necessary to achieve compliance with the terms and conditions of this permit. (40 CFR 122.41(e))

E.   Duty to Mitigate

The permittee shall take all reasonable steps to minimize or prevent any discharge, sludge use or disposal in violation of this permit that has a reasonable likelihood of adversely affecting human health or the environment. (40 CFR 122.41(d))

F.  Bypassing

    1.  Bypassing Not Exceeding Permit Limitations - The permittee may allow a bypass to occur which does not cause effluent limitations to be exceeded, but only if it also is for essential maintenance to assure efficient operation.  These bypasses are not subject to the provisions in paragraphs two, three and four of this section. (40 CFR 122.41(m)(2))

    2.  Other Bypassing - In all other situations, bypassing is prohibited and DEP may take enforcement action against the permittee for bypass unless:

        a.  A bypass is unavoidable to prevent loss of life, personal injury or "severe property damage." (40 CFR 122.41(m)(4)(i)(A))

        b.  There are no feasible alternatives to the bypass, such as the use of auxiliary treatment facilities, retention of untreated wastes, or maintenance during normal periods of equipment downtime.  This condition is not satisfied if adequate backup equipment should have been installed in the exercise of reasonable engineering judgment to prevent a bypass which occurred during normal periods of equipment downtime or preventive maintenance. (40 CFR 122.41(m)(4)(i)(B))

        c.  The permittee submitted the necessary notice required in F.4.a. and b. below. (40 CFR 122.41(m)(4)(i)(C))

    3.  DEP may approve an anticipated bypass, after considering its adverse effects, if DEP determines that it will meet the conditions listed in F.2. above. (40 CFR 122.41(m)(4)(ii))

    4.  Notice

        a.  Anticipated Bypass – If the permittee knows in advance of the need for a bypass, it shall submit prior notice, if possible, at least 10 days before the bypass. (40 CFR 122.41(m)(3)(i))

        b.  Unanticipated Bypass – The permittee shall submit oral notice of any other unanticipated bypass within 24 hours, regardless of whether the bypass may endanger health or the environment or whether the bypass exceeds effluent limitations. The notice shall be in accordance with Part A III.C.4.b.

## II.  PENALTIES AND LIABILITY

A.  Violations of Permit Conditions

Any person violating Sections 301, 302, 306, 307, 308, 318 or 405 of the Clean Water Act or any permit condition or limitation implementing such sections in a permit issued under Section 402 of the Act is subject to civil, administrative and/or criminal penalties as set forth in 40 CFR 122.41(a)(2).

Any person or municipality, who violates any provision of this permit; any rule, regulation or order of DEP; or any condition or limitation of any permit issued pursuant to the Clean Streams Law, is subject to criminal and/or civil penalties as set forth in Sections 602, 603 and 605 of the Clean Streams Law.

B.  Falsifying Information

Any person who does any of the following:

-  Falsifies, tampers with, or knowingly renders inaccurate any monitoring device or method required to be maintained under this permit, or

-  Knowingly makes any false statement, representation, or certification in any record or other document submitted or required to be maintained under this permit (including monitoring reports or reports of compliance or noncompliance)

Shall, upon conviction, be punished by a fine and/or imprisonment as set forth in 18 Pa.C.S.A § 4904 and 40 CFR 122.41(j)(5) and (k)(2).

C.   Liability

Nothing in this permit shall be construed to relieve the permittee from civil or criminal penalties for noncompliance pursuant to Section 309 of the Clean Water Act or Sections 602, 603 or 605 of the Clean Streams Law.

Nothing in this permit shall be construed to preclude the institution of any legal action or to relieve the permittee from any responsibilities, liabilities or penalties to which the permittee is or may be subject to under the Clean Water Act and the Clean Streams Law.

D.   Need to Halt or Reduce Activity Not a Defense

It shall not be a defense for the permittee in an enforcement action that it would have been necessary to halt or reduce the permitted activity in order to maintain compliance with the conditions of this permit. (40 CFR 122.41(c))

III.   **OTHER RESPONSIBILITIES**

A.   Right of Entry

Pursuant to Sections 5(b) and 305 of Pennsylvania's Clean Streams Law, and Title 25 Pa. Code Chapter 92a and 40 CFR 122.41(i), the permittee shall allow authorized representatives of DEP and EPA, upon the presentation of credentials and other documents as may be required by law:

1.   To enter upon the permittee's premises where a regulated facility or activity is located or conducted, or where records must be kept under the conditions of this permit; (40 CFR 122.41(i)(1))

2.   To have access to and copy, at reasonable times, any records that must be kept under the conditions of this permit; (40 CFR 122.41(i)(2))

3.   To inspect at reasonable times any facilities, equipment (including monitoring and control equipment), practices or operations regulated or required under this permit; and (40 CFR 122.41(i)(3))

4.   To sample or monitor at reasonable times, for the purposes of assuring permit compliance or as otherwise authorized by the Clean Water Act or the Clean Streams Law, any substances or parameters at any location. (40 CFR 122.41(i)(4))

B.   Transfer of Permits

1.   Transfers by modification.  Except as provided in paragraph 2 of this section, a permit may be transferred by the permittee to a new owner or operator only if this permit has been modified or revoked and reissued, or a minor modification made to identify the new permittee and incorporate such other requirements as may be necessary under the Clean Water Act. (40 CFR 122.61(a))

2.   Automatic transfers.  As an alternative to transfers under paragraph 1 of this section, any NPDES permit may be automatically transferred to a new permittee if:

a.   The current permittee notifies DEP at least 30 days in advance of the proposed transfer date in paragraph 2.b. of this section; (40 CFR 122.61(b)(1))

b.   The notice includes the appropriate DEP transfer form signed by the existing and new permittees containing a specific date for transfer of permit responsibility, coverage and liability between them; (40 CFR 122.61(b)(2))

c.   DEP does not notify the existing permittee and the proposed new permittee of its intent to modify or revoke and reissue this permit, the transfer is effective on the date specified in the agreement mentioned in paragraph 2.b. of this section; and (40 CFR 122.61(b)(3))

    d.  The new permittee is in compliance with existing DEP issued permits, regulations, orders and schedules of compliance, or has demonstrated that any noncompliance with the existing permits has been resolved by an appropriate compliance action or by the terms and conditions of the permit (including compliance schedules set forth in the permit), consistent with 25 Pa. Code §_92a.51 (relating to schedules of compliance) and other appropriate DEP regulations. (25 Pa. Code § 92a.71)

3.  In the event DEP does not approve transfer of this permit, the new owner or operator must submit a new permit application.

C.  Property Rights

The issuance of this permit does not convey any property rights of any sort, or any exclusive privilege. (40 CFR 122.41(g))

D.  Duty to Reapply

If the permittee wishes to continue an activity regulated by this permit after the expiration date of this permit, the permittee must apply for a new permit. (40 CFR 122.41(b))

E.  Other Laws

The issuance of this permit does not authorize any injury to persons or property or invasion of other private rights, or any infringement of state or local law or regulations.

## IV.  ANNUAL FEES

Permittees shall pay an annual fee in accordance with 25 Pa. Code § 92a.62.  Annual fee amounts are specified in the following schedule and are due on each anniversary of the effective date of the most recent new or reissued permit. All flows identified in the schedule are annual average design flows. (25 Pa. Code § 92a. 62)

| | |
|---|---|
| Minor IW Facility without ELG (Effluent Limitation Guideline) | $500 |
| Minor IW Facility with ELG | $1,500 |
| Major IW Facility < 250 MGD (million gallons per day) | $5,000 |
| Major IW Facility ≥ 250 MGD | $25,000 |
| IW Stormwater Individual Permit | $1,000 |
| CAAP (Concentrated Aquatic Animal Production Facility) | $0 |

As of the effective date of this permit, the facility covered by the permit is classified in the following fee category: **Major IW Facility <250 MGD**.

Invoices for annual fees will be mailed to permittees approximately three months prior to the due date.  In the event that an invoice is not received, the permittee is nonetheless responsible for payment.  Throughout a five year permit term, permittees will pay four annual fees followed by a permit renewal application fee in the last year of permit coverage.  Permittees may contact DEP at 717-787-6744 with questions related to annual fees. The fees identified above are subject to change in accordance with 25 Pa. Code § 92a.62(e).

Payment for annual fees shall be remitted to DEP at the address below by the anniversary date.  Checks should be made payable to the Commonwealth of Pennsylvania.

PA Department of Environmental Protection
Bureau of Clean Water
Re: Chapter 92a Annual Fee
P.O. Box 8466
Harrisburg, PA 17105-8466

3800-PM-BCW0011   Rev. 2/2020
Permit

Permit No. PA0006254 A-3

| PART C |
|---|

**I.   OTHER REQUIREMENTS**

A.   The approval herein given is specifically made contingent upon the permittee acquiring all necessary property rights by easement or otherwise, providing for the satisfactory construction, operation, maintenance or replacement of all structures associated with the herein approved discharge in, along, or across private property, with full rights of ingress, egress and regress.

B.   Collected screenings, slurries, sludges, and other solids shall be handled, recycled and/or disposed of in compliance with the Solid Waste Management Act (35 P.S. §§ 6018.101 – 6018.1003), 25 Pa. Code Chapters 287, 288, 289, 291, 295, 297, and 299 (relating to requirements for landfilling, impoundments, land application, composting, processing, and storage of residual waste), Chapters 261a, 262a, 263a, and 270a (related to identification of hazardous waste, requirements for generators and transporters, and hazardous waste, requirements for generators and transporters, and hazardous waste permit programs), federal regulation 40 CFR Part 257, The Clean Streams Law, and the Federal Clean Water Act and its amendments. Screenings collected at intake structures shall be collected and managed and not be returned to the receiving waters.

The permittee is responsible to obtain or assure that contracted agents have all necessary permits and approvals for the handling, storage, transport and disposal of solid waste materials generated as a result of wastewater treatment.

C.   The terms and conditions of Water Quality Management (WQM) permits that may have been issued to the permittee relating to discharge requirements are superseded by this NPDES permit unless otherwise stated herein.

D.   If the applicable standard or effluent guideline limitation relating to the application for Best Available Technology (BAT) Economically Achievable or to Best Conventional Technology (BCT) is developed by DEP or EPA for this type of industry, and if such standard or limitation is more stringent than the corresponding limitations of this permit (or if it controls pollutants not covered by this permit), DEP may modify or revoke and reissue the permit to conform with that standard or limitation.

E.   The permittee shall optimize chlorine dosages used for disinfection or other purposes to minimize the concentration of Total Residual Chlorine (TRC) in the effluent, meet applicable effluent limitations, and reduce the possibility of adversely affecting the receiving waters.  Optimization efforts may include an evaluation of wastewater characteristics, mixing characteristics, and contact times, adjustments to process controls, and maintenance of the disinfection facilities.  If DEP determines that effluent TRC is causing adverse water quality impacts, DEP may reopen this permit to apply new or more stringent effluent limitations and/or require implementation of control measures or operational practices to eliminate such impacts.

Where the permittee does not use chlorine for primary or backup disinfection, but proposes the use of chlorine for cleaning or other purposes, the permittee shall notify DEP prior to initiating use of chlorine and monitor TRC concentrations in the effluent on each day in which chlorine is used.  The results shall be submitted as an attachment to the DMR.

F.   Temperature

This discharge shall not cause a change in the stream temperature of more than 2°F during any one hour.

G.   Chlorine or other approved biocides may not be discharged from any single generating unit for more than two hours per day unless the discharger demonstrates to the permitting authority that discharges for more than two hours are required for macroinvertebrate control. Simultaneous multi-unit chlorination/biocide application is permitted.

H. There shall be no net addition of pollutants to non-contact cooling water over intake values except for heat and water conditioning additives for which complete information was submitted in the application or is required to be submitted as a condition of this permit.

I. In accordance with ORSANCO's Pollution Control Standards, the permittee shall post and maintain a permanent marker at the establishment under permit as follows:

   1. A marker shall be posted on the stream bank at each outfall discharging directly to the Ohio River (Outfall(s) 001, 004, 005, 006, and 007).

   2. The marker shall consist of, at a minimum, the name of the establishment to which the permit was issued, the permit number, and the outfall number. The information shall be printed in letters not less than two inches in height.

   3. The marker shall be a minimum of two feet by two feet and shall be a minimum of three feet above ground level.

J. Cooling tower blowdown discharges shall contain no detectable amounts of the 126 Priority Pollutants listed in 40 CFR Part 423, Appendix A, that are contained in chemicals added for cooling tower maintenance, except for Total Chromium and Total Zinc.  When requested by DEP, the permittee shall conduct monitoring or submit engineering calculations to demonstrate compliance with 40 CFR 423.13(d)(1).

## II.   SOLIDS MANAGEMENT

A. The permittee shall manage and properly dispose of sewage sludge and/or biosolids by performing sludge wasting that maintains an appropriate mass balance of solids within the treatment system.  The wasting rate must be developed and implemented considering the specific treatment process type, system loadings, and seasonal variation while maintaining compliance with effluent limitations. Holding excess sludge within clarifiers or in the disinfection process is not permissible.

B. The permittee shall submit the Supplemental Reports entitled, "Supplemental Report – Sewage Sludge/Biosolids Production and Disposal" (Form No. 3800-FM-BCW0438) and "Supplemental Report – Influent & Process Control" (Form No. 3800-FM-BCW0436), as attachments to the DMR on a monthly basis. When applicable, the permittee shall submit the Supplemental Reports entitled, "Supplemental Report – Hauled In Municipal Wastes" (Form No. 3800-FM-BCW0437) and "Supplemental Report – Hauled In Residual Wastes" (Form No. 3800-FM-BCW0450), as attachments to the DMR.

## III.   WQBELs BELOW QUANTITATION LIMITS

A. The parameter(s) listed below are subject to water quality-based effluent limits (WQBELs) in Part A of this permit that are necessary to comply with state water quality standards, but may be less than quantitation limits (QLs), as defined in 25 Pa. Code § 252.1, that are generally achievable by conventional analytical technology.  The permittee shall analyze the parameter(s) using methods that will achieve the QL(s) as listed below.  For the purpose of compliance, a statistical value reported on the DMR that is less than the QL(s) (i.e., "non-detect") will be considered to be in compliance.

| Parameter Name | Quantitation Limit |
|---|---|
| Benzo(a)anthracene | 2.5 µg/L |
| Hexachlorobenzene | 5.0 µg/L |

B. The permittee shall, where determined to be feasible by the permittee, achieve a QL less than the QL identified above to improve the level of confidence that state water quality standards are being met in the receiving waters.

C. The permittee shall manage non-detect values and report statistical results to DEP in accordance with published DMR guidance (3800-BK-DEP3047 and 3800-FS-DEP4262).   Where a mixed data set exists

containing non-detect results and "detected" values (i.e., results greater than or equal to the QL), the QL shall be used for non-detect results to compute average statistical results.

## IV.   CHEMICAL ADDITIVES

A.  Approved Chemical Additives List

1.  The permittee is authorized to use chemical additives that are published on DEP's Approved Chemical Additives List (Approved List) (see www.dep.pa.gov/chemicaladditives) subject to paragraphs A.2 and A.3, below.

2.  The permittee may not discharge a chemical additive at a concentration that is greater than the water quality-based effluent limitation (WQBEL) for the chemical additive or, if applicable, a technology-based effluent limitation.  If effluent limitations are not specified in Part A of this permit for the chemical additive, the permittee is responsible for determining the WQBEL and ensuring the WQBEL is not exceeded by restricting usage to an amount that will not cause an excursion above in-stream water quality standards.

3.  If the permittee decides to use a chemical additive that is on DEP's Approved List and the use would either (1) constitute an increase in the usage rate specified in the NPDES permit application or previous notification to DEP or (2) constitute a new use, not identified in the NPDES permit application or otherwise no previous notification occurred, the permittee shall complete and submit the "Chemical Additives Notification Form" (3800-FM-BCW0487) to the DEP regional office that issued the permit.  The permittee may proceed to use the chemical additive as reported on the Form upon receipt by the DEP regional office.

B.  New Chemical Additives, Not on Approved Chemical Additives List

1.  In the event the permittee wishes to use a chemical additive that is not listed on DEP's Approved List, the permittee shall submit the "New Chemical Additives Request Form" (3800-FM-BCW0486) to DEP's Central Office, Bureau of Clean Water (BCW), NPDES Permitting Division, Rachel Carson State Office Building, PO Box 8774, Harrisburg, PA 17105-8774, prior to use.  A copy shall be submitted to the DEP regional office that issued the permit.  The form must be completed in whole in order for BCW to approve the chemical additive, and a Material Safety Data Sheet (MSDS) that meets the minimum requirements of 29 CFR 1910.1200(g) must be attached.

2.  Following placement of the chemical additive on the Approved List, the permittee may submit the Chemical Additive Notification Form in accordance with paragraph A.3, above, to notify DEP of the intent to use the approved chemical additive.  The permittee may proceed with usage when the new chemical has been identified on DEP's Approved List and following DEP's receipt of the Chemical Additives Notification Form.

3.  The permittee shall restrict usage of chemical additives to the maximum usage rates determined and reported to DEP on Chemical Additives Notification Forms.

C.  Chemical Additives Usage Reporting Requirements

The "Chemical Additives Usage Form" (3800-FM-BCW0439) shall be used to report the usage of chemical additives and shall be submitted as an attachment to the Discharge Monitoring Report (DMR) at the time the DMR is submitted.

D.  DEP may amend this permit to include WQBELs or otherwise control usage rates of chemical additives if there is evidence that usage is adversely affecting receiving waters, producing Whole Effluent Toxicity test failures, or is causing excursions of in-stream water quality standards.

## V.   REQUIREMENTS APPLICABLE TO STORMWATER OUTFALLS

A.  The permittee is authorized to discharge non-polluting stormwater from its site, alone or in combination with other wastewaters, through the following outfalls:

| Outfall No. | Area Drained (ac) | Latitude | Longitude | Description |
|---|---|---|---|---|
| 001 | 88 | 40° 39' 29.75" | -80° 21' 26.75" | Manufacturing plant |
| 020 | 11 | 40° 39' 15.66" | -80° 21' 2.74" | Parking and administration areas |
| 021 | 1 | 40° 39' 17.47" | -80° 21' 4.86" | Small portion of the manufacturing plant |
| 025 | 2 | 40° 39' 35.80" | -80° 21' 13.50" | Small portion of the manufacturing plant |

Monitoring requirements and effluent limitations for these outfalls are specified in Part A of this permit, if applicable.

B.  Stormwater Annual Report.

The permittee shall submit a complete Annual Report to the DEP office that issued the permit by May 1 each year using DEP's Annual Report template, attached to this permit.  The Annual Report shall address activities under the permit for the previous calendar year.  The permittee shall submit the Annual Report electronically if notified by DEP in writing.  If the permittee discharges to a municipal separate storm sewer system (MS4), a copy of the Annual Report shall be submitted to the operator of the MS4.

C.  Best Management Practices (BMPs).

The permittee shall implement and, as necessary, maintain the following BMPs to remain in compliance with this permit.

1.  Pollution Prevention and Exposure Minimization.

The permittee shall minimize the exposure of manufacturing, processing, and material storage areas (including loading and unloading, storage, disposal, cleaning, maintenance, and fueling operations) to rain, snow, snowmelt, and runoff in order to minimize pollutant discharges by either locating industrial materials and activities inside or protecting them with storm resistant coverings wherever feasible.  The permittee shall implement and maintain the following measures, at a minimum:

a.  Use grading, berming or curbing to prevent runoff of polluted stormwater and divert run-on away from areas that contain polluted stormwater

b.  Locate materials, equipment, and activities so that potential leaks and spills are contained or able to be contained or diverted before discharge to surface waters

c.  Clean up spills and leaks promptly using dry methods (e.g., absorbents) to prevent the discharge of pollutants to surface waters

d.  Store leaky vehicles and equipment indoors or, if stored outdoors, use drip pans and absorbents to prevent the release of pollutants to the environment.

e.  Use spill/overflow protection equipment.

f.  Perform all vehicle and/or equipment cleaning operations indoors, under cover, or in bermed areas that prevent runoff and run-on and also that capture any overspray.

g.  Drain fluids from equipment and vehicles that will be decommissioned, and, for any equipment and vehicles that will remain unused for extended periods of time, inspect at least monthly for leaks.

h.  Keep all dumpster lids closed when not in use. For dumpsters and roll off boxes that do not have lids, ensure that discharges have a control (e.g., secondary containment, treatment). This General Permit does not authorize dry weather discharges from dumpsters or roll off boxes.

i.   Minimize contamination of stormwater runoff from fueling areas by implementing the following BMPs where determined to be feasible: cover fueling areas; install oil/water separators or oil and grease traps in fueling area storm drains; use berms to prevent run-on to and runoff from fueling areas; use spill/overflow protection and cleanup equipment; use dry cleanup methods; and/or treat and/or recycle collected stormwater runoff.

j.   Train employees routinely (no less than annually) on pollution prevention practices as contained in the PPC Plan.

2.   Good Housekeeping.

The permittee shall perform good housekeeping measures in order to minimize pollutant discharges including the routine implementation of the following measures, at a minimum:

a.   Implement a routine cleaning and maintenance program for all impervious areas of the facility where particulate matter, dust or debris may accumulate to minimize the discharge of pollutants in stormwater. The cleaning and maintenance program must encompass, as appropriate, areas where material loading and unloading, storage, handling and processing occur.

b.   Store materials in appropriate containers.

c.   Minimize the potential for waste, garbage and floatable debris to be discharged by keeping exposed areas free of such materials, or by intercepting them before they are discharged.

d.   Eliminate floor drain connections to storm sewers.

e.   Use drip pans, drain boards, and drying racks to direct drips back into a fluid holding tank for reuse. Drain fluids from all equipment and parts prior to disposal. Promptly transfer used fluids to the proper container; do not leave full drip pans or other open containers around the shop. Empty and clean drip pans and containers.

f.   Label and track the recycling of waste material (e.g., used oil, spent solvents, batteries).

g.   Prohibit the practice of hosing down an area where the practice would result in the discharge of pollutants to a municipal or other storm water collection system that conveys pollutants off-site without proper treatment.

3.   Erosion and Sediment Controls.

a.   The permittee shall minimize erosion and pollutant discharges by stabilizing exposed soils and placing flow velocity dissipation devices at discharge locations to minimize channel and stream bank erosion and scour in the immediate vicinity of stormwater outfalls.

b.   The permittee shall conduct all earth disturbance activities and, when applicable, shall maintain all post-construction stormwater management (PCSM) BMPs in accordance with 25 Pa. Code Chapter 102.

c.   The permittee may not utilize polymers or other chemicals to treat stormwater unless written permission is obtained from DEP.

4.   Spill Prevention and Responses.

The permittee shall minimize the potential for leaks, spills and other releases that may be exposed to stormwater and develop a PPC Plan for effective responses to such releases.  The permittee shall conduct the following spill prevention and response measures, at a minimum:

a.  Maintain an organized inventory of materials on-site.  Plainly label containers (e.g., "Used Oil," "Spent Solvents," "Fertilizers and Pesticides") that could be susceptible to spillage or leakage to encourage proper handling and facilitate rapid response if spills or leaks occur.

b.  Implement procedures for material storage and handling, including the use of secondary containment and barriers between material storage and traffic areas, or a similarly effective means designed to prevent the discharge of pollutants from these areas.

c.  Develop and implement employee and contractor training on the procedures for expeditiously stopping, containing, and cleaning up leaks, spills, and other releases. The permittee shall conduct periodic training, no less than annually, and document the training on the Annual Report specified in paragraph B of this section.

d.  Keep spill kits on-site, located near areas where spills may occur or where a rapid response can be made.

e.  Notify appropriate facility personnel when a leak, spill, or other release occurs.

f.  To the extent possible, eliminate or reduce the number and amount of hazardous materials and waste by substituting non-hazardous or less hazardous materials of equal function, as determined by the permittee.

g.  Clean up leaks, drips, and other spills without using large amounts of water or liquid cleaners. Use absorbents for dry cleanup whenever possible.

When a leak, spill or other release occurs during a 24-hour period that contains a hazardous substance or oil in an amount equal to or in excess of a reportable quantity established under 40 CFR Parts 110, 117 or 302, the permittee shall, in addition to the notification requirements contained in Part A III.C.4 of this permit, notify the National Response Center (NRC) at (800) 424-8802 in accordance with the requirements of 40 CFR Parts 110, 117, and 302 as soon as the permittee becomes aware of the discharge.

5.  Sector- and Site-Specific BMPs.

a.  The permittee shall implement the BMPs in the applicable Appendix to the NPDES PAG-03 General Permit for Discharges of Stormwater Associated with Industrial Activities that is currently in effect.

D.  Routine Inspections.

1.  The permittee shall visually inspect the following areas and BMPs on a semiannual basis (calendar periods), at a minimum:

a.  Areas where industrial materials or activities are exposed to stormwater.

b.  Areas identified in the PPC Plan as potential pollutant sources.

c.  Areas where spills or leaks have occurred in the past three years.

d.  Stormwater outfalls and locations where authorized non-stormwater discharges may commingle.

e.  Physical BMPs used to comply with this permit.

At least once each calendar year, the routine inspection must be conducted during a period when a stormwater discharge is occurring.

2.  The permittee shall evaluate and document the following conditions, at a minimum, in the Annual Report required by paragraph B of this section through required inspections:

    a.   Raw materials, products or wastes that may have or could come into contact with stormwater.

    b.   Leaks or spills from equipment, drums, tanks and other containers.

    c.   Off-site tracking of industrial or waste materials, or sediment where vehicles enter or exit the site.

    d.   Tracking or blowing of raw, final or waste materials from areas of no exposure to exposed areas.

    e.   Control measures or BMPs needing replacement, maintenance or repair.

    f.   The presence of authorized non-stormwater discharges that were not identified in the permit application and non-stormwater discharges not authorized by this permit.

E.   Preparedness, Prevention and Contingency (PPC) Plan

    1.   The permittee shall develop and implement a PPC Plan in accordance with 25 Pa. Code § 91.34 following the guidance contained in DEP's "Guidelines for the Development and Implementation of Environmental Emergency Response Plans" (DEP ID 400-2200-001), its NPDES-specific addendum and the minimum requirements below.

        a.   The PPC Plan must identify all potential sources of pollutants that may reasonably be expected to affect the quality of stormwater discharges from the facility.

        b.   The PPC Plan must describe preventative measures and BMPs that will be implemented to reduce or eliminate pollutants from coming into contact with stormwater resulting from routine site activities and spills.

        c.   The PPC Plan must address actions that will be taken in response to on-site spills or other pollution incidents.

        d.   The PPC Plan must identify areas which, due to topography or other factors, have a high potential for soil erosion, and identify measures to limit erosion.  Where necessary, erosion and sediment control measures must be developed and implemented in accordance with 25 Pa. Code Chapter 102 and DEP's "Erosion and Sediment Pollution Control Manual" (DEP ID  363-2134-008).

        e.   The PPC Plan must address security measures to prevent accidental or intentional entry which could result in an unintentional discharge of pollutants.

        f.   The PPC Plan must include a plan for training employees and contractors on pollution prevention, BMPs, and emergency response measures.  This training must be conducted in accordance with paragraph C.4.c of this section.

        g.   If the facility is subject to SARA Title III, Section 313, the PPC Plan must identify releases of "Water Priority Chemicals" within the previous three years.  Water Priority Chemicals are those identified in EPA's "Guidance for the Determination of Appropriate Methods for the Detection of Section 313 Water Priority Chemicals" (EPA 833-B-94-001, April 1994).  The Plan must include an evaluation of all activities that may result in the stormwater discharge of Water Priority Chemicals.

        h.   Spill Prevention Control and Countermeasure (SPCC) plans may be used to meet the requirements of this section if the minimum requirements are addressed.

    2.   The permittee shall review and if necessary update the PPC Plan on an annual basis, at a minimum, and when one or more of the following occur:

        a.   Applicable DEP or federal regulations are revised, or this permit is revised.

        b.   The PPC Plan fails in an emergency.

   c.   The facility's design, industrial process, operation, maintenance, or other circumstances change in a manner that materially increases the potential for fires, explosions or releases of toxic or hazardous constituents; or which changes the response necessary in an emergency.

   d.   The list of emergency coordinators or equipment changes.

   e.   When notified in writing by DEP.

The permittee shall maintain all PPC Plan updates on-site, make the updates available to DEP upon request, and document the updates in Annual Reports.

F.   Stormwater Monitoring Requirements.

1.   The permittee shall conduct monitoring of its stormwater discharges at the representative outfalls identified in Part A of this permit, if applicable. The permittee shall document stormwater sampling event information and no exposure conditions for each calendar year on the Annual Report required by paragraph B of this section.

2.   The permittee shall, upon written notice from DEP, install inlets, pipes, and/or other structures or devices that are considered necessary in order to conduct representative stormwater sampling, in accordance with a schedule provided by DEP.

3.   The permittee shall collect all samples from discharges resulting from a storm event that is greater than 0.1 inch in magnitude and that occurs at least 72 hours from the previously measurable (greater than 0.1 inch rainfall) storm event. The 72-hour storm interval is waived when the preceding storm did not yield a measurable discharge, or if the permittee is able to document that a less than 72-hour interval is representative for local storm events during the sample period.

4.   The permittee shall collect all grab samples within the first 30 minutes of a discharge, unless the permittee determines that this is not possible, in which case grab samples must be collected as soon as possible after the first 30 minutes of a discharge. The permittee shall explain why samples could not be collected within the first 30 minutes of any discharge on the Annual Report required by paragraph B of this section.

5.   The permittee shall collect stormwater samples at times when commingling with non-stormwater discharges is not occurring or at locations prior to the commingling of non-stormwater discharges, unless Part A of this permit recognizes commingling of stormwater and non-stormwater discharges.

6.   In the event that stormwater discharge concentrations for a parameter exceeds the benchmark values identified below at the same outfall for two or more consecutive monitoring periods, the permittee shall develop a corrective action plan to reduce the concentrations of the parameters in stormwater discharges. The permittee shall submit the corrective action plan to DEP within 90 days of the end of the monitoring period triggering the need for the plan, and shall implement the plan immediately upon submission or at a later time if authorized by DEP in writing. The permittee shall, in developing the plan, evaluate alternatives to reduce stormwater concentrations and select one or more BMPs or control measures for implementation, unless the permittee can demonstrate in the plan that (1) the exceedances are solely attributable to natural background sources; (2) no further pollutant reductions are technologically available and economically practicable and achievable in light of best industry practice; or (3) further pollutant reductions are not necessary to prevent stormwater discharges from causing or contributing to an exceedance of applicable water quality standards.

| Parameter | Benchmark Value |
|---|---|
| Total Suspended Solids | 100 mg/L |
| Chemical Oxygen Demand | 120 mg/L |
| pH | between 6.0 and 9.0 s.u. |
| Nitrate+Nitrite as N | 0.68 mg/L |

3800-PM-BCW0011   Rev. 2/2020
Permit

| Parameter | Benchmark Value |
|---|---|
| Phosphorus, Total | 2.0 mg/L |
| Aluminum, Total | 0.75 mg/L |
| Chromium, Total | 0.086 mg/L |
| Copper, Total | 0.09375 mg/L |
| Iron, Total | 3.0 mg/L |
| Lead, Total | 0.0032 mg/L |
| Zinc, Total | 0.12 mg/L |

## VI.   COOLING WATER INTAKE STRUCTURE(S)

A.   Nothing in this permit authorizes a take of endangered or threatened species under the Endangered Species Act.

B.   Technology and operational measures currently employed at the cooling water intake structures must be operated in a way that minimizes impingement mortality and entrainment to the fullest extent possible.

C.   The location, design, construction or capacity of the intake structure(s) may not be altered without prior approval of DEP.

D.   The permittee shall monitor the actual intake flows at a minimum frequency of daily, including measurements of cooling water withdrawals, make-up water and blow down volume or, alternatively, monitor cycles of concentration at a minimum frequency of daily.

E.   Requirements for Permit Renewal Application.

The permittee shall submit the following information with its subsequent permit renewal application:

1.   Source water physical data.

2.   Cooling water intake structure data.

3.   Source water biological baseline characterization data.

4.   Cooling water system data.

5.   Operational status.

6.   The permittee must submit an entrainment reduction technology evaluation with the subsequent permit renewal application, which must include at a minimum, an evaluation of the feasibility, cost estimates, and environmental impacts of reducing intake flow using alternate sources of cooling water, water re-use, closed-cycle recirculating cooling; and fine mesh screens.

7.   If DEP requests additional information to make a BTA determination, the permittee shall submit information within 30 days unless an alternate schedule is approved by DEP.

F.   The permittee shall retain data and other records for any information developed pursuant to Section 316(b) of the Clean Water Act for a minimum of ten years.